# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

---

**In Re**

JACKIE DEAN CAPPS,
ROSE ANN CAPPS,

**Bankruptcy Case
No. 09-02465-JDP**

**Debtors.**

---

## MEMORANDUM OF DECISION

---

**Appearances:**

Jeremy J. Gugino, Boise, Idaho, Chapter 7 Trustee.

Kent Corbett, Meridian, Idaho, Corbett Auctioneers & Appraisers, Inc.

### *Introduction*

On February 2, 2010, the Court conducted a hearing concerning the Amended Application for Compensation of [Trustee's] Auctioneer ("Application") filed in this case by Corbett Auctioneers & Appraisers, Inc.

MEMORANDUM OF DECISION - 1

("Auctioneer"). Docket No. 34. Jeremy Gugino, the chapter 7[1] trustee, and Kent Corbett, the general manager of Auctioneer, appeared at the hearing and offered their comments. At the conclusion of their remarks, the Court allowed the parties additional time to supplement the record, at which point the issues raised by the Application would be deemed under advisement. Trustee filed his "declaration" in support of the Application on February 5, 2010. Docket No. 41. There were no additional submissions by Auctioneer.

Having reviewed the record, the arguments of the parties, and the applicable law, the Court concludes that the Application should be granted and compensation approved, but in an amount less than that requested by Auctioneer.[2]

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101 - 1532, and all rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001 - 9037.

[2] This Memorandum sets forth the Court's findings of fact and conclusions of law. Rules 7052, 9014.

MEMORANDUM OF DECISION - 2

*Facts*

Debtors Jackie Dean and Rose Ann Capps filed a petition for relief under chapter 7 of the Bankruptcy Code on August 18, 2009; Trustee was appointed to administer the estate. Debtors listed a Chevy Silverado, two Honda ATVs, and a utility trailer as assets in their bankruptcy schedules. Debtors valued the truck at $12,000, the ATVs at $500 each, and the trailer at $700. Trustee demanded turnover of the vehicles and the trailer at the § 341(a) meeting of creditors conducted on September 24, 2009. Later that same day, Trustee filed a notice of sale which indicated that these items would be sold at a public auction on October 17, 2009. Docket No. 16.

A few days later, on September 28, 2009, Trustee filed an application to employ Auctioneer to sell the vehicles. Docket No. 18. The application proposed that Auctioneer should receive for its services, subject to post-sale Court approval, a 10% commission based upon the gross sale price of the property sold. It also proposed that Auctioneer be allowed to collect a 10% "buyer's premium" from the successful purchaser. There were no objections to this application, and on October 22, 2009, the Court entered

MEMORANDUM OF DECISION - 3

an order authorizing the employment of Auctioneer, effective as of September 28, 2009, the filing date of the application. Docket No. 28. The order did not "pre-approve" the amount of compensation; instead, it provided that compensation would be allowed in such amount as deemed appropriate by the Court upon proper application pursuant to § 330 and Rule 2016. *Id.*

After the application to employ Auctioneer was filed, Auctioneer, working directly with Debtors, took possession of the vehicles and the trailer and stored them on its secure, insured lot. Auctioneer advertised the sale of these and other items to be sold at the auction in local newspapers and classified listings.[3] Prior to the sale, Auctioneer cleaned the items and prepared them for auction, though Auctioneer conceded at the hearing that they were "fairly clean" when he took them from Debtors. Auctioneers estimates his cost for this clean-up service at approximately $10 per item.

---

[3] At the hearing, Trustee and Auctioneer explained that these items were advertised as part of a larger auction, in an attempt to attract more potential buyers and generate higher bid prices.

MEMORANDUM OF DECISION - 4

Auctioneer conducted the public auction for these and other items on October 17, 2009; Debtors' four vehicles sold for a total of $35,860.[4] Following the sale, Trustee filed a report of sale indicating that net proceeds of $29,340 had been paid by Auctioneer to Trustee for the benefit of the estate.[5] *See* Docket No. 30. Thereafter, on December 21, 2009, Auctioneer filed its Application. Docket No. 33.[6] In the Application, Auctioneer explained that it provided pickup and storage services at no cost to the estate. In addition, Auctioneer indicated that it also provided advertising and labor services at no cost to the estate, although Auctioneer explained that, in its estimation, $801.23 of the total cost of these services could be fairly apportioned to these four items of property on a pro-rata

---

[4] The total amount of bids on these four items was actually $32,600. However, Auctioneer assessed a "buyer's premium" on each successful purchaser equal to 10% of the final bid price on each item, resulting in gross receipts by Auctioneer for all items of $35,860.

[5] This figure represents the gross sales price of $35,860 less a 10% buyer's premium of $3,260 and less a 10% commission of $3,260.

[6] An amended application was filed the following day to delete certain "negative notice" provisions in the original application. Docket No. 34. Aside from that change, the amended application was identical to the original application.

MEMORANDUM OF DECISION - 5

basis based upon sale prices. For its services, Auctioneer requested a total fee of $6,520, comprised of a $3,260 sale's commission, and a $3,260 buyer's premium. No reimbursement for any expenses was requested.

In his declaration in support of Auctioneer's Application, Trustee explained that he has cultivated a business relationship with Auctioneer over the course of the past two years. During that time, Trustee estimates that Auctioneer has sold upwards of 150 items for Trustee, generating between $400,000 and $500,000 in sale proceeds which have been distributed to creditors in various bankruptcy cases. Trustee explained that because he does not want to jeopardize his relationship with Auctioneer in any way, he would be willing to cut his own fee to the extent ordered by the Court so that Auctioneer might receive the full amount of compensation it requested. Trustee estimates his proposed fee in this case will be $3,691.29 plus costs of $83.17.

*Discussion*

Court-approved professionals employed by trustees pursuant to § 327 may receive reasonable compensation for actual and necessary

MEMORANDUM OF DECISION - 6

services rendered to a bankruptcy estate, as well as reimbursement for actual and necessary expenses. 11 U.S.C. § 330(a)(1); *In re Driller*, 04.3 I.B.C.R. 91, 93 (Bankr. D. Idaho 2004). Operating in concert with § 330(a), Rule 2016 requires that a professional seeking final compensation file an application with the Court setting forth a detailed statement of the services rendered, the time expended, the expenses incurred, and the amount requested as compensation. Rule 2016(a).

In compliance with Rule 2016, Auctioneer filed[7] an application for compensation which detailed the services it provided to the estate and set forth the amount of compensation it seeks to recover. Concerned that the total fee requested in this case may be unreasonable in light of the information in the record regarding the services provided to the estate – even after Auctioneer and Trustee gave further explanation regarding

---

[7] Although the application was signed by Auctioneer, it was actually filed by Trustee as an accommodation to Auctioneer, who is not registered to file pleadings electronically with the Court. Such an accommodation is also provided by other trustees in Idaho to some of their non-attorney professionals. *See, e.g.,* Application for Compensation by Prime Time Auctions, Inc., Docket No. 42, *In re Young*, Bankr. Case No. 09-40395; Application for Compensation by Troy Black, Auctioneer, Docket No. 37, *In re Williams*, Bankr. Case No. 09-20383.

MEMORANDUM OF DECISION - 7

Auctioneer's services at the hearing – the Court allowed the parties additional time to supplement the record. Auctioneer declined to submit anything in response to that invitation. Trustee, on the other hand, submitted a declaration in support of Auctioneer's Application. Unfortunately, Trustee's supplemental declaration raised more questions about the Application than it answered.

A.

At the outset, it is important to remember that it is Auctioneer's burden (not Trustee's) to demonstrate that it is entitled to the compensation requested. *Pfeiffer v. Couch (In re Xebec)*, 147 B.R. 518, 524 (9th Cir. B.A.P. 1992); *In re Ferreira*, 95 I.B.C.R. 282, 283 (Bankr. D. Idaho 1995). The Code prescribes several factors the Court should consider in evaluating a request for fees by an estate professional. These include: the time spent; the rate charged; the necessity and benefit of the services; whether the services were commensurate with the complexity, importance, and nature of the problem or task addressed; and whether the compensation is reasonable in light of customary compensation by

MEMORANDUM OF DECISION - 8

comparably skilled professionals in non-bankruptcy cases. 11 U.S.C. § 330(a)(3). Bankruptcy judges are given broad discretion in determining the reasonable amount of compensation to award to estate professionals. *In re A.W. Logging, Inc.*, 356 B.R. 506, 515 (Bankr. D. Idaho 2006); *Kennedy v. Rams Hill, LLC (In re Borrego Springs Dev. Corp.)*, 253 B.R. 271, 281 (Bankr. S.D. Cal. 2000). In appropriate circumstances, the Court may award compensation that is less than the amount requested by the applicant. 11 U.S.C. § 330(a)(2).

Applying these factors here, presumably, the Court can comfortably conclude that Auctioneer's services were beneficial to the estate and assisted Trustee in the administration of this bankruptcy case. Property of the estate was liquidated for Trustee at an auction conducted by Auctioneer.

That said, however, it does not appear that the task for which Auctioneer was employed was all that complex. Auctioneer apparently routinely sells motor vehicles and trailers at its regularly scheduled auctions. Indeed, these four items were included in one such larger

MEMORANDUM OF DECISION - 9

auction. There is no indication in the record that Auctioneer was required to engage in any special efforts to take possession of these assets from Debtors, nor is there evidence that any extensive pre-sale preparation of the items was needed. Even so, it is apparent that some time and effort was required to sell these assets. For example, Auctioneer explained that it picked up the assets from Debtors and cleaned them prior to the auction. In addition, Auctioneer stored these assets in its secured lot for approximately thirty days.

Auctioneer incurred advertising expenses and provided other "labor services" to the estate. While these were supposedly provided at "no cost to the estate," Auctioneer indicated in the Application that $801.23 can be attributed to these services on a pro-rata basis. Although an income and expense report from the auction was attached to the Application, the Court cannot determine how this prorated amount was computed.[8] The auction

---

[8] Attached to Trustee's application to employ Auctioneer is an Auction Agreement, which provides that "[t]he costs and expenses of advertisement and promotion of [this] sale will be prorated (based on each item's sales price as a percentage of the total sales at said auction) between all parties providing merchandise for sale at the auction." Docket No. 18-1, at ¶ 4.

MEMORANDUM OF DECISION - 10

income and expense report reveals gross auction proceeds for all items of $447,396.49 and total advertising costs of $3,127.82. The gross sales price of the four items in this case was $35,860, or 8.02% of the total auction proceeds. Using the formula in the auction agreement, only $250.70 in advertising costs should be attributed to this case. Presumably, the balance of the $801.23, or $550.53, is the prorated portion of other "labor services" provided. However, Auctioneer did not clarify what these other services were.

For its services, Auctioneer seeks compensation amounting to $6,520. On this record, this seems an unreasonably high fee for the limited services Auctioneer provided in this particular case, and the Court declines to approve that amount.

B.

Trustee makes an effort in his supplemental declaration to support Auctioneer's Application that deserves discussion by the Court.

First, he notes that, as a chapter 7 trustee, Trustee began employing Auctioneer to retrieve, store, prepare, market and sell personal property

MEMORANDUM OF DECISION - 11

items from various bankruptcy estates approximately two years ago. During that time, Trustee estimates that Auctioneer has sold over 150 items generating between $400,000 and $500,000 in proceeds which were then distributed to creditors. Given his long-standing, constructive relationship and experience with Auctioneer, Trustee suggests the Court should respect their fee arrangement in this case.

While the information provided by Trustee about his dealings with Auctioneer provides context, and no doubt evidences a good working relationship between Trustee and Auctioneer, it is not particularly relevant to the reasonableness of Auctioneer's compensation in this particular case. Auctioneer's compensation here can not be founded upon its performance in other, past cases, but rather must stand or fall based solely on the actual service provided to Trustee in selling the four items in this case alone.

Similarly, Trustee explains that over the past two years, Auctioneer has provided advice and counsel to Trustee concerning the value of certain types of property which, he insists, has allowed him to better identify undervalued assets in debtors' bankruptcy schedules. Again, this sort of

MEMORANDUM OF DECISION - 12

service may certainly be valuable to Trustee.  On the other hand, presumably, the extent to which Trustee consults Auctioneer to determine if goods could be successfully auctioned or otherwise sold, and the value of those goods, also arguably works to Auctioneer's benefit as Trustee's usual liquidator.  And again, there is simply no indication in the record that Auctioneer provided advice to Trustee about selling Debtor's vehicles, a decision Trustee apparently made in short order after talking with Debtors at the § 341(a) meeting.

Absent a more concrete link between Auctioneer's advice and this particular case, Trustee's contention that Auctioneer's compensation should be approved because he is a frequent consultant for Trustee has little utility in this § 330(a) analysis.

Finally, because Trustee is apparently concerned that his relationship with Auctioneer may be in jeopardy if the Court declines to approve the full amount of Auctioneer's fee request, Trustee offers to reduce his own compensation in this case.  While this appears noble on the surface, Trustee's concession is problematic for several reasons.

MEMORANDUM OF DECISION - 13

As noted above, preserving Auctioneer's business relationship with Trustee is not one of the factors required in the statutory analysis under § 330(a). Rather, Trustee's compensation must be based upon the reasonable value of services actually provided in this case. Based upon what the Court has been shown that Auctioneer did in this case, and its many years of experience in reviewing countless auctioneer fee applications in this District, it determines that $6,520 is an unreasonably high amount for compensation under the particular circumstances of this case.

Secondly, Trustee's agreement to reduce his own fee, which he suggests will amount to $3,691.29, presupposes that Court approval of that fee is a foregone conclusion.[9] Under the Code, that can not be correct. Like his auctioneer, Trustee's fee is also subject to a separate § 330(a) statutory analysis based upon the services he actually performed, as

---

[9] By this comment, the Court is not suggesting this amount is, or is not, a proper fee for Trustee in this case. Absent a proposed final accounting and fee application of his own, the Court simply has no way to determine what amounts should be approved for Trustee's compensation in this case.

MEMORANDUM OF DECISION - 14

further limited by the sliding scale set forth in § 326. Chapter 7 trustees are not empowered by the Code to apportion their professional compensation among various estate professionals. As a result, Trustee's willingness to forfeit all or a portion of his own fee does not alter the extent of services provided by Auctioneer, nor does it enhance the reasonable value of the services actually provided. Trustee's offer is no help to Auctioneer.

## *Conclusion*

Based upon the submissions of the parties, the Court's experience and knowledge of auctioneer compensation rates charged in the District, and mindful of the actual services provided by Auctioneer in this case, the Court determines that $4,500 represents reasonable compensation for Auctioneer's services. Auctioneer's application for compensation will be approved in this amount. Because Auctioneer did not request reimbursement for any actual and necessary expenses under § 330(a)(1)(B), none will be awarded.

A separate order will be entered.

Dated: March 8, 2010

MEMORANDUM OF DECISION - 15

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION - 16